IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on April 29, 2005

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | VIOLATIONS: |
| AKIUBER NDOROMO JAMES, | : | 18 U.S.C. § 1347 (Health Care |
| a/k/a AKUBE WUROMONI NDOROMO, | : | Fraud); |
| | : | 18 U.S.C. § 1343 (Wire Fraud); |
| and VOICE OF SOCIAL CONCERN | : | 18 U.S.C. § 1035(a)(2)(False |
| ASSOCIATION, INC., | : | Statements Regarding Health Care |
| | : | Matters); |
| Defendants. | : | 18 U.S.C. § 1957 |
| | : | (Money Laundering); and |
| | : | 18 U.S.C. § 982 |
| ............................................................... | : | (Criminal Forfeiture) |

**INDICTMENT**

The Grand Jury charges that:

At various times relevant and material to this Indictment:

**COUNT ONE**

**(HEALTH CARE FRAUD)**

**Introduction**

1.   Defendant, AKIUBER NDOROMO JAMES, a/k/a AKUBE WUROMONI NDOROMO ("NDOROMO"), was the President, Chief Executive Officer and owner of VOICE OF SOCIAL CONCERN, INC. ("VSCA"), a business incorporated in the District of Columbia.

2.   VSCA's business address was Apartment B1235, 3636 16th Street, N.W., Washington, D.C., which was also NDOROMO's residence.

3.     NDOROMO filed articles of incorporation for VSCA in the District of Columbia on or about September 21, 1999. NDOROMO held VSCA out to be a tax-exempt, charitable organization. On or about January 10, 2001, VSCA applied to become and was granted status as a D.C. Medicaid transportation provider. Thereafter, VSCA began billing the Medicaid program, claiming that VSCA was transporting qualified Medicaid recipients to authorized medical appointments and seeking reimbursement from Medicaid for those costs.

4.     NDOROMO paid Mary Khangaa to perform certain ministerial and secretarial tasks for VSCA, including answering phones and filling out Medicaid reimbursement claim forms. She performed these tasks from her residence located at Apartment 207, 3025 15th Street, N.W., Washington, D.C., and kept some VSCA business records there.

### The Medicaid Program

5.     Medicaid is a health care benefit program, established by the federal government and jointly-funded between the Federal and State governments and the District of Columbia as a cooperative venture, which provides medical and health-related services for some people with low incomes and limited resources, such as the elderly, children and the disabled. The Medicaid program is administered by each state and the District of Columbia within the national guidelines established by the Center for Medicare and Medicaid Services ("CMS"), United States Department of Health and Human Services ("HHS").

6.     In the District of Columbia, the Department of Health Medical Assistance Administration ("MAA") administered the Medicaid program.

7.     MAA contracted with insurance carriers such as Affiliated Computer Services, Inc. (ACS), and its predecessor First Health, to receive and process claims submitted by health care

providers seeking reimbursement from Medicaid for providing authorized services to Medicaid recipients. Medicaid reimbursement payments were sent to health care providers by MAA.

8.  Medicaid was a "health care benefit program" because it was a public plan or contract, affecting commerce, under which medical benefits, items, and services for eligible District of Columbia residents were provided.

### Billing Procedures

9.  In order to be eligible to receive reimbursement from Medicaid for providing non-emergency transportation of Medicaid recipients to Medicaid-approved appointments, a transportation services provider in the District of Columbia was required to apply for and be approved as a Medicaid transportation provider by Medicaid. In order to transport any particular Medicaid recipient, a transportation provider was required to obtain authorization from Medicaid to transport that individual and to obtain an authorization number specific to that individual. An authorized Medicaid transportation provider was also required to maintain a log documenting each trip provided for each Medicaid beneficiary, and to submit claims for reimbursement which documented those trips. Pursuant to District of Columbia municipal regulations, the log was required to include the date, the type of trip, and each beneficiary's Medicaid number. Before October 16, 2003, authorized Medicaid transportation providers were paid $30.00 for each round-trip taken inside the District of Columbia. After October 16, 2003, the rate was increased to $33.00. Payment for trips outside the District of Columbia were calculated on the basis of mileage.

10. Medicaid, through ACS, did not reimburse a provider for all transportation provided to any Medicaid recipient. Rather, transportation providers were reimbursed only for authorized

3

transportation services provided to Medicaid recipients who were in need of such services and who the transportation provider had been pre-approved by Medicaid to transport.

11. VSCA became a D.C. Medicaid transportation provider on or about January 10, 2001, under one category of Medicaid transportation referred to as "Non-Emergency Transportation." As such, VSCA was issued a unique transportation provider number. Then, on or about July 1, 2002, VSCA was also authorized under another category known as the "Waiver Program," a Medicaid program designed to provide health care services to Mentally Retarded and Developmentally Disabled ("MRDD") individuals, and VSCA was issued another distinct transportation number for that category of services. NDOROMO signed the Medicaid Transportation Provider Applications as the President and Chief Executive Officer of VSCA.

12. NDOROMO prepared, and directed Khangaa to prepare, claims purporting to document transportation services provided by VSCA to beneficiaries for both categories (Non-Emergency Transportation and the MRDD Waiver Program) and NDOROMO, and Khangaa at the direction of NDOROMO, submitted them to Medicaid. NDOROMO signed these claims that were submitted to Medicaid.

### Bank Accounts

13. NDOROMO owned, maintained and was the sole signatory for the following bank accounts:

   a. Bank of America account number xxxx xxxx 7376 held in the name of Voice of Social Concern Association, Inc.;

   b. Bank of America account number xxx xxx xxxx 0436 held in the name of Voice of Social Concern Association, Inc.;

   c. Bank of America account number xxx xxx xxxx 2911 held in the name of Voice of Social Concern Association, Inc.;

   d. Bank of America account number xxx xxx xxxx 3214 held in the name of Voice of Social Concern Association, Inc.;

   e. Bank of America account number xxxx xxxx 5727 held in the names of Akuiber Ndoromo James and Akube Wuromoni Ndoromo;

   f. Citibank account number xxxxxx6821 held in the name of Akube Wuromoni Ndoromo;

   g. Citibank account number xxxxxx6044 held in the name of Akiuber Ndoromo James; and

   h. Citibank account number xxxxxx1961 held in the name of Akiuber Ndoromo James.

### The Scheme to Defraud

14. Between in or about January 2002 and continuing through in or about December 2004, NDOROMO and VSCA (collectively "the defendants") devised and intended to devise a scheme and artifice to defraud and obtain money by means of false and fraudulent pretenses, representations and promises from Medicaid by preparing and submitting false claims to Medicaid.

### Purpose of the Scheme

15. It was a purpose of the scheme and artifice to defraud that the defendants would obtain money fraudulently from Medicaid which the defendants would use for their own benefit.

**Manner and Means of the Scheme**

16. It was part of the scheme to defraud that the defendant NDOROMO incorporated or caused to be incorporated VSCA, which NDOROMO registered as and held out to be a tax-exempt, charitable organization engaged in the provision of transportation services to Medicaid recipients.

17. It was further part of the scheme to defraud that the defendants prepared and submitted false invoices to Medicaid, claiming that transportation services had been provided by VSCA to certain Medicaid beneficiaries, when, in fact, those services had not been provided, including in cases when:

    (a) the Medicaid beneficiaries were deceased;

    (b) the Medicaid beneficiaries had never used VSCA's services;

    (c) the Medicaid beneficiaries had discontinued VSCA's services; and

    (d) the Medicaid beneficiaries had used VSCA's services, but VSCA submitted false claims inflating the services provided.

18. It was further part of the scheme that the defendants prepared and submitted fraudulent invoices to Medicaid, requesting payment for transportation provided to certain Medicaid recipients, when, in fact, VSCA was not the authorized transportation provider for the Medicaid recipient, or the transportation services billed for by VSCA were not authorized, because, for example, the recipient was not in need of transportation services, or the destination was not one for which transportation was authorized by Medicaid.

19. It was further part of the scheme that the defendants solicited, or caused others to solicit, Medicaid beneficiaries, whether or not the beneficiaries were in need of transportation

services or had been authorized to receive certain transportation services by Medicaid, in order for the defendants to obtain the beneficiaries' individual Medicaid numbers. Once the defendants obtained the beneficiaries' Medicaid numbers, the defendants began transporting the beneficiaries without obtaining the required authorization from Medicaid and otherwise used the beneficiaries' Medicaid numbers to submit fraudulent invoices to Medicaid.

20. It was further part of the scheme and artifice to defraud that the defendant NDOROMO used revenue generated from Medicaid reimbursements made to VSCA to fund NDOROMO's personal bank accounts, purchase automobiles and to pay for a variety of personal items and expenses. NDOROMO used $35,000 from VSCA's Bank of America account number xxxx xxxx 7376 to purchase a 2004 Land Rover automobile (VIN #SALTR19434A829815) from Land Rover Rockville, Rockville, Maryland, on July 19, 2004. Also, from January 22, 2002 through March 18, 2003, NDOROMO wrote sixteen checks totaling $25,322.87 drawn on VSCA's Bank of America account number xxxx xxxx 7376 and made payable to GMAC in order to make payments in full on a loan for a Chevrolet Express automobile (VIN # IGAHG39R211120100).

21. In furtherance of their scheme and artifice to defraud, the defendants prepared on their computer fraudulent invoices, which they sent to Medicaid by means of wire communication in interstate commerce. The defendants discontinued this practice because they did not have the proper authorization numbers to enter into the billing program and the Medicaid computer system was, therefore, more likely to reject the billing claims. The defendants switched to preparing fraudulent invoices manually and submitting them in paper or "hard copy" form to Medicaid, which resulted in the absence of proper documentation being more frequently overlooked and in the defendants being more frequently reimbursed by Medicaid for the fraudulent invoices.

22. On or about February 17, 2004, NDOROMO filed an application with Medicaid requesting that reimbursement for VSCA claims be made by direct wire deposit into VSCA Bank of America account number xxxx xxxx 7376. Medicaid accepted Ndoromo's request and began in or about April 2004 to transmit payments via wire communications in interstate commerce directly into that VSCA Bank of America account. Prior to that time, Medicaid had mailed reimbursement checks to VSCA's listed office address, which was also NDOROMO's residence.

23. In furtherance of the scheme and artifice to defraud, the Medicaid funds wired into VSCA's Bank of America account number xxxx xxxx 7376, were transferred by NDOROMO into a variety of other bank accounts controlled by NDOROMO, listed above in paragraph 13.

24. Between in or about January 2002 and continuing through in or about December 2004, in the District of Columbia and elsewhere, the defendants, knowingly and willfully devised and executed a scheme and artifice to defraud a health care benefit program, namely Medicaid, and to obtain from Medicaid, money under the custody and control of Medicaid, by fraudulent pretenses, representations, and promises, namely, false claims, in connection with the delivery of, and payment for, health care benefits, items, and services.

**(Health Care Fraud, in violation of Title 18, United States Code, Section 1347.)**

## COUNTS TWO THROUGH FIVE

### (WIRE FRAUD)

1. Paragraphs 1 through 23 of Count 1 are re-alleged and incorporated as though fully set forth herein.

### Use of the Wires

2. On or about each of the dates specified below, in a continuing course of conduct, in the District of Columbia, the defendants, NDOROMO and VSCA, for the purpose of executing the above-described scheme and artifice to defraud Medicaid, and for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire communication in interstate commerce the following writings, signals and sounds; that is, the defendants caused Medicaid funds to be transmitted by means of wire communication in interstate commerce to a VSCA bank account, including those made on or about the following dates in the following amounts:

**Count 2**: Medicaid wire transfer of $32,208 into VSCA's Bank of America account number xxxx xxxx 7376 on or about May 6, 2004;

**Count 3**: Medicaid wire transfer of $67,551 into VSCA's Bank of America account number xxxx xxxx 7376 on or about August 23, 2004;

**Count 4**: Medicaid wire transfer of $32,290.50 into VSCA's Bank of America account number xxxx xxxx 7376 on or about October 6, 2004; and

**Count 5**: Medicaid wire transfer of $40, 037 into VSCA's Bank of America account number xxxx xxxx 7376 on or about November 11, 2004.

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343.)**

## COUNTS SIX THROUGH EIGHTEEN

### (FALSE STATEMENTS RELATING TO HEALTH CARE MATTERS)

1. Paragraphs 1 through 23 of Count 1 are re-alleged and incorporated as though fully set forth herein.

2. On or about each of the specified dates below, in the District of Columbia, the defendants, NDOROMO and VSCA, in a matter involving a health care benefit program, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations and made and used materially false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries in connection with the delivery of and payment for health care benefits, items, and services, to wit: claims submitted to Medicaid as described below for each count:

| COUNT | MEDICAID BENEFICIARY'S INITIAL AND IDENTIFICATION NUMBER | DATES OF SERVICE CLAIMED | DATE ON CLAIM FORM | AMOUNT REIMBURSED TO VSCA |
|---|---|---|---|---|
| 6 | LT 70116232 | 2/5-6/04, 2/9-12/04 | 2/19/04 | $198 |
| 7 | LT 70116232 | 2/13/04, 2/17-18/04 | 2/19/04 | $99 |
| 8 | KF 70399474 | 2/27/04, 3/1-3/04 | 3/4/04 | $132 |
| 9 | BB 70101246 (Deceased 12/1/03) | 3/30-31/04, 4/1-4/04 | 4/8/04 | $0 |
| 10 | BB 70101246 (Deceased 12/1/03) | 4/5-7/04 | 4/8/04 | $0 |
| 11 | JB 70167736 (Deceased 3/10/04) | 3/18-19/04 3/22-25/04 | 4/8/04 | $198 |

| | | | | |
|---|---|---|---|---|
| 12 | JB<br>70167736<br>(Deceased 3/10/04) | 3/26/04,<br>3/29-31/04,<br>4/1-2/04 | 4/8/04 | $198 |
| 13 | CK<br>70167635 | 6/24-29/04 | 7/8/04 | $198 |
| 14 | CK<br>70167635 | 6/30/04,<br>7/1-5/04 | 7/8/04 | $198 |
| 15 | SS<br>70165181 | 6/24-25/04,<br>6/28-30/04,<br>7/1/04 | 7/08/04 | $198 |
| 16 | SS<br>70165181 | 7/2/04,<br>7/6-7/04 | 7/08/04 | $99 |
| 17 | MA<br>70106772 | 6/24-25/04,<br>6/28-30/04,<br>7/1/04 | 7/8/04 | $198 |
| 18 | MA<br>70106722 | 8/25-27/04,<br>8/30-31/04,<br>9/01/04 | 9/07/04 | $198 |

**(False Statements Regarding Health Care Matters, in violation of Title 18, United States Code, Section 1035 (a)(2).)**

## COUNTS TWENTY THROUGH TWENTY-SEVEN

## (MONEY LAUNDERING)

1. Paragraphs 1 through 23 of Count 1 are re-alleged and incorporated as though fully set forth herein.

2. On or about each of the dates specified below, within the District of Columbia, NDOROMO and VSCA, knowingly engaged and attempted to engage in the monetary transactions set forth below by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, health care fraud and wire fraud:

| Count | Date of Transaction | Description of Transaction | Amount |
|---|---|---|---|
| 20 | Jan. 16, 2002 | Defendant NDOROMO's deposit into Bank of America account number xxx xxx xxxx 0436 (VSCA) from Bank of America account number xxxx xxxx 7376 (VSCA) | $20,000.00 |
| 21 | April 21, 2003 | Defendant NDOROMO's deposit into Bank of America account number xxx xxx xxxx 2911 (VSCA) from Bank of America account number xxxx xxxx 7376 (VSCA) | $50,000.00 |
| 22 | May 24, 2003 | Defendant NDOROMO's deposit into Citibank account number xxxxxx6044 (NDOROMO) from Bank of America account number xxxx xxxx 7376 (VSCA). | $100,000.00 |
| 23 | July 3, 2003 | Defendant NDOROMO's deposit into Citibank account number xxxx6821 (NDOROMO) from Bank of America account number xxxx xxxx 7376 (VSCA) | $50,000.00 |

| 24 | Sept. 15, 2003 | Defendant NDOROMO's deposit into Bank of America account number xxx xxx xxxx 3214 (VSCA) from Bank of America account number xxx xxx xxxx 4300 (VSCA), by way of an official cashier's check made payable to AKUBE WUROMONI NDOROMO (which account was then closed; the original $10,000 deposit in Bank of America account number xxx xxx xxxx 4300 having been earlier transferred by NDOROMO from Bank of America account number xxxx xxxx 7376 (VSCA)) | $10,331.26 |
|---|---|---|---|
| 25 | Sept. 15, 2003 | Defendant NDOROMO's deposit into Bank of America account number xxx xxx xxxx 3214 (VSCA) from Bank of America account number xxxx xxxx 7376 (VSCA) | $89,668.74 |
| 26 | April 2, 2004 | Defendant NDOROMO's deposit into Citibank account number xxxx6821 (NDOROMO) from Bank of America account number xxxx xxxx 7376 (VSCA) | $250,000.00 |
| 27 | August 2, 2004 | Defendant NDOROMO's deposit into Bank of America account number xxxx xxxx 5727 (NDOROMO) from Bank of America account number xxxx xxxx 7376 (VSCA) | $15,000.00 |

**(Money Laundering, in Violation of Title 18, United States Code Section 1957.)**

**FORFEITURE ALLEGATION**

**UNDER 18 U.S.C. §§ 982(a)(1) and (a)(7)**

1.   Upon conviction of the health care fraud offenses alleged in Count 1 of this Indictment, herein re-alleged and incorporated by reference for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(7), the defendants, NDOROMO and VSCA, shall forfeit to the United States all property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offenses.

2.	Upon conviction of the money laundering offenses alleged in Counts 20-27 of this Indictment, herein re-alleged and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982(a)(1), the defendants, NDOROMO and VSCA, shall forfeit to the United States any property, real or personal, involved in, or traceable to such property involved in money laundering, in violation of Title 18, United States Code, Section 1957.

3.	The property the United States intends to forfeit, on the bases described in paragraphs 1 and 2 above, includes, but is not limited to:

Automobiles:

(a) one dark blue/green 2004 Land Rover Discovery II, sport utility vehicle, bearing vehicle identification number SALTR19434A829815 and tag CB2367, registered in the name of Akube Ndoromo; and

(b) one blue 2001 Chevrolet 3500 Express van, bearing vehicle identification number 1GAHG39R211120100 and tag B40149, registered in the name of Akube Ndoromo.

Money Judgment:

(c) A sum of money which represents the total amount of property constituting or derived, directly or indirectly, from gross proceeds traceable to the commission of the health care fraud offenses for which the defendant(s) have been convicted; and

(d) A sum of money which represents the property involved in, or traceable to the property involved in the money laundering offense for which the defendant(s) have been convicted.

4.	If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

5.	If any of the property described above as being subject to forfeiture pursuant to Title 18, United States Code, Section 982, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property that cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property listed above as being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 18, United States Code Sections 982(a)(7) and 982(a)(1).)**

A TRUE BILL:

FOREPERSON

ATTORNEY OF THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA