# ATTACHMENT 1

Search Warrant for Defendant's home office

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Woodner Apartments
Apartment B1235
3636 16th Street, N.W.
Washington, D.C.

**UNDERSEAL**

**SEARCH WARRANT**

CASE NUMBER: 04-800

TO: __Elton Malone__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by __Special Agent with the Department of Health and Human Services (DHHS)__ who has reason to believe that ☐ on the person or ☒ on the premises known as (name, description and or location)

Woodner Apartmetnts, Apartment B1235, 3636 16th Street, N.W., Washington, D.C. including any locked or padlocked rooms within.

(as further described in "Schedule A")

in the District of Columbia , there is now concealed a certain person or property, namely (describe the person or property)

(as further described in "Schedule B")

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before __December 30, 2004__
(Date)
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search ☑ (in the daytime - 6:00 A.M. to 10:00 P.M.) ☐ (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

20 DEC 2004

Date and Time Issued

John M. Facciola
U.S. Magistrate Judge
Name and Title of Judicial Officer

at Washington, D.C.

[signature: John M. Facciola]
Signature of Judicial Officer

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Woodner Apartments
Apartment B1235
3636 16th Street, N.W.
Washington, D.C.

**UNDERSEAL**

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 04-500

(Further described below)

I ___Elton Malone___ being duly sworn depose and say:

I am a(n) ___Special Agent with the Department of Health and Human Services___ and have reason to believe
(Official Title)
that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)

Woodner Apartments, Apartment B1235, 3636 16th Street, N.W., Washington, D.C. including any locked or padlocked rooms within.

(as further described in "Schedule A")

in the District of Columbia., there is now concealed a certain person or property, namely (describe the person or property to be searched)

(as further described in "Schedule B")

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities

concerning a violation of Title _18_ United States Code, Section(s) _§§ 1347 and 1341_. The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES  ☐ NO

Robert Bowman
Fraud and Public Corruption
(202) 353-2877

_[signature]_
Signature of Affiant
Elton Malone, Special Agent
Department of Health and Human Services (DHHS)

Sworn to before me, and subscribed in my presence

20 DEC 2004

Date    John M. Facciola
        U.S. Magistrate Judge

at Washington, D.C.

Name and Title of Judicial Officer        Signature of Judicial Officer

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Woodner Apartments
Apartment B1235
3636 16th Street, N.W.
Washington, D.C.

**UNDERSEAL**

**SEARCH WARRANT**

CASE NUMBER: 04-800

TO: __Elton Malone__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by __Special Agent with the Department of Health and Human Services (DHHS)__ who has reason to believe that ☐ on the person or ☒ on the premises known as (name, description and or location)

Woodner Apartmetnts, Apartment B1235, 3636 16th Street, N.W., Washington, D.C. including any locked or padlocked rooms within.

(as further described in "Schedule A")

in the District of Columbia , there is now concealed a certain person or property, namely (describe the person or property)

(as further described in "Schedule B")

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before _____
(Date)
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search ☐ (in the daytime - 6:00 A.M. to 10:00 P.M.) ☐ (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

20 DEC 2004                                    at Washington, D.C.
_____
Date and Time Issued
John M. Facciola
U.S. Magistrate Judge                          _____
Name and Title of Judicial Officer             Signature of Judicial Officer

# AFFIDAVIT

I, Elton Malone, being duly sworn and appointed Special Agent of the Department of Health and Human Services (DHHS), Office of Inspector General, Office of Investigation hereby make the following statement. Based upon information obtained by me, including information relayed to me by other Special Agents of the Department of Health and Human Services, U.S. Postal Inspection Service, Federal Bureau of Investigation, District of Columbia Metropolitan Police Department, and Investigators of the District of Columbia, Department of Health, Medical Assistance Administration, Office of Investigations and other sources to this investigation, there is probable cause to believe that there is kept and concealed within the premises known and described as the Apartment B1235, Woodner Apartments, 3636 16th Street, N.W., Washington, D.C., and Apartment 207, 3025 15th Street, N.W., Washington, D.C., fruits, instrumentalities and evidence of violations of Title 18, United States Code, Section 1347 (health care fraud) and 1341 (mail fraud). The first location to be searched is the business address of Voice of Social Concern Association, Inc. ("VSCA"), which is also the residence of the company's president, Akiuber Ndoromo James, also known as Akube Wuromoni Ndoromo. VSCA is a company that purports to provide transportation to D.C. Medicaid recipients for their non-emergency medical visits. The second location is the residence of Mary Khangaa, who states she is the Office Manager of VSCA, and who apparently works from this location.

The two locations to be searched are described in more detail in Schedule A to this affidavit. The evidence to be seized is described in Schedule B to this affidavit.

## AFFIANT BACKGROUND

I have been a Special Agent with the DHHS, Washington Field Office, Washington, D.C. since May 11, 1998. I attended and graduated from The Federal Law Enforcement Training Center's Basic Criminal Investigator Training Program in Glynco, Georgia. Since that time I have conducted numerous investigations and participated in numerous searches pursuant to search warrants that have resulted in the arrest and conviction of various offenders. My duties as a Special Agent with the DHHS primarily involve the investigation of fraud in the Medicare and Medicaid programs.

## BACKGROUND OF THE MEDICAID PROGRAM

Medicaid is a health insurance program. Medicaid is a jointly funded cooperative venture between the federal and state governments and the District of Columbia, established by the federal government under Title 18 of the Social Security Act of 1965, which provides medical and health-related services for some people with low incomes and limited resources. The Medicaid program is administered by each state and the District of Columbia within the broad national guidelines provided by the Center for Medicare and Medicaid Services (CMS).

Under the District of Columbia's Medicaid Program, transportation is provided, if requested and the need is established, to all eligible Medicaid recipients who are seeking medical care and services covered under the Program. Federal laws, regulations and rules prohibit falsely claiming transportation expenses not requested and authorized by the District of Columbia's Medicaid Program, or not actually incurred or medically necessary.

CMS is the agency under DHHS that regulates the Medicaid program. CMS contracts with insurance carriers such as Affiliated Computer Services (ACS), and its predecessor, First Health, to

process claims and reimburse transportation providers for reasonable claims relating to pre-authorized transportation of Medicaid recipients.

## UNLAWFUL ACTIVITY

This investigation, which included: 1) interviews of the District of Columbia's Medicaid Program representatives; 2) reviews of applicable Medicaid regulations and claims reports; 3) analysis of information obtained through interviews of alleged clients of VSCA; and 4) analysis and interpretation of claims data, revealed that many of the billing submissions by VSCA are in violation of federal law and Medicaid regulations. For example, this investigation revealed the following:

1. James and VSCA defrauded a health care benefit program by billing D.C. Medicaid for transportation services not rendered from on or about January 1, 2002 through on or about September 30, 2004. James and VSCA accomplished this scheme by billing Medicaid for transportation services which James and VSCA claimed were provided to Medicaid beneficiaries, when, in fact, no such services were provided. As part of James' and VSCA's scheme to defraud Medicaid, they obtained beneficiaries' individual Medicaid numbers, including the numbers for prior beneficiaries who were deceased, and used those numbers to repeatedly submit false bills to Medicaid for transportation that was never provided to the beneficiaries.

2. On or about January 10, 2001, VSCA became a D.C. Medicaid transportation provider, entitled to receive reimbursement from Medicaid for the provision of non-emergency transportation to Medicaid recipients. James signed the Medicaid Transportation Provider Application as the President and/or Chief Executive Officer of VSCA. Our investigation indicates that VSCA owns and operates approximately two vans and employs one or two drivers to operate those vans. In order to receive reimbursements from Medicaid, VSCA is required to maintain a "Daily Transportation Log,"

pursuant to District of Columbia Municipal Regulations, Title 29, Section 995. In order to receive reimbursements from Medicaid, VSCA is required to submit a log relating to each trip provided to each beneficiary, which includes the date, the type of trip, and each beneficiary's Medicaid number. Transportation providers are reimbursed by Medicaid at a rate of $30 (before October 16, 2003) and $33 (after October 16, 2003) for round-trips taken inside the District of Columbia and for trips which take them outside of the District of Columbia, they are reimbursed on the basis of mileage. James signed periodic claims purporting to document transportation services provided to beneficiaries and submitted them to D.C. Medicaid.

3. VSCA and James submitted claims to a private billing company retained by D.C. Medicaid to process such bills. D.C. Medicaid, in turn, sent checks in the amount of the claim via the U.S. Mail to the address given by VSCA as its business address at 3636 16th St. N.W. Apartment #B1235, Washington, DC 20010-8144 (this is also James' residence) (and had sent checks to James' previous address of 1515 Ogden St. N.W. Apartment #232, Washington, DC 20010-1248), or by wire directly to VSCA's account at the Bank of America, N.A., account #0019 2067 7376. D.C. Medicaid checks sent by mail were deposited by James into this same VSCA bank account. Bank of America records also list 3636 16th Street, N.W. Apartment B1236, Washington, D.C. as the address for VSCA.

4. D.C. Medicaid paid VSCA approximately $295,880.23 in 2002, $591,818.23 in 2003, and $663,069 through September 30, 2004 for transportation services, for a total of approximately $1,550,767.46. D.C. Medicaid records indicate that these totals make VSCA one of the highest paid providers of transportation services in the District of Columbia. As discussed below, the evidence gathered to-date indicates that a substantial portion, if not the vast majority, of these funds were fraudulently obtained.

5. On April 22, 2004, the District of Columbia Department of Health, Surveillance and Utilization Review Unit conducted an on-site audit of the VSCA. The transportation records for ten randomly selected clients of VSCA were reviewed, covering the time period of October 1, 2002 through September 30, 2003. The audit revealed that VSCA did not maintain documentation to support the billing of transportation services rendered to these Medicaid recipients. Only three recipients even had authorization for transportation services noted in their records. In addition, the provider was not using the transportation log that became mandatory, effective May 2003.

6. Following that audit, investigators with the Office of the Inspector General of the Department of Health and Human Services and the Medical Assistance Administration reviewed the D.C. Medicaid records pertaining to several of those beneficiary numbers most frequently used by VSCA in submitting claims for the provision of services. Data was collected for 15 of the beneficiaries who were most frequently claimed by VSCA for the period of January 1, 2002 through June 2, 2004. VSCA obtained reimbursement for these 15 beneficiaries. The investigation revealed that none of these 15 beneficiaries received the transportation services to the extent which VSCA billed and was paid by D.C. Medicaid for providing those services. The total amount paid by D.C. Medicaid to VSCA for just these 15 beneficiaries amounted to $134,622. Of the 15 beneficiaries, eleven were contacted and interviewed, three had been pronounced deceased prior to the purported date of service, and one individual was only billed for VSCA transportation costs, not for any other Medicaid-approved service centers, which, as explained below, indicates that no reimbursable transportation services were provided by VSCA to this beneficiary. Each of the 11 beneficiaries who were contacted stated that they had not received the transportation services to the extent that James and VSCA claimed they had. In some cases, the beneficiaries stated that they had never used VSCA's

services, and had never given VSCA their Medicaid numbers. In other cases, the beneficiaries had used the VSCA van service once or a few times, but James and VSCA made Medicaid claims amounting to thousands of dollars for these beneficiaries after they had stopped using the service. The beneficiaries' initial use of VSCA permitted VSCA to obtain the beneficiaries' Medicaid numbers, which were then used to submit the fraudulent reimbursement claims.

7. One of the beneficiaries who was interviewed, S.S., had contacted the Medicaid hotline on May 27, 2004, to verify services billed by the beneficiary's transportation company (a company other than VSCA). S.S. stated that S.S. had been using transportation services seven days a week, but had recently changed to five days a week and wanted to make sure that the transportation company had adjusted their billing to the lesser amount. A Medical Assistance Administration investigator reviewed the claims submitted by the beneficiary's transportation provider and saw that the provider was still billing Medicaid for seven days a week, rather than the five days. While reviewing these claims, the investigator also noticed that VSCA had also submitted claims for providing daily transportation to S.S. The investigator contacted S.S., and S.S. stated that S.S. had never heard of and had never utilized any van transportation by the name of VSCA. Further analysis of Medicaid claims data revealed that VSCA billed and received payments from Medicaid for transportation services provided to S.S. from March 6, 2003 to June 2, 2004 in the amount of $9,796.50 for services that were not rendered.

8. In another example, on August 30, 2004, your affiant interviewed M.A., and M.A. stated that he/she discontinued using the services of VSCA during March 2002. M.A. stopped using the VSCA because of their tendency for being tardy. M.A. further stated that M.A. had not used any van transportation company since March 2002. M.A. currently uses the public transportation once a week