IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 06-0019 (EGS) |
| ) | |
| AKUBE NDOROMO, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO DEFENDANT'S MOTIONS**[1]

Akube Ndoromo, through undersigned counsel, respectfully replies to the Government's Opposition to defendant's motions to suppress statements and physical evidence, and to dismiss the indictment, as follows:

**Statement of Facts**

The United States responds to defendant's motions by characterizing them as baseless and boiler-plate, and asks this court to summarily deny the motions. The government asserts that the motions rely upon "an absurd description of the completely legal and proper search of defendant's home/office." Opp. 1.[2] At a hearing on the motions, the evidence will show that the defendant's description of events surrounding the execution of the search warrants is not absurd; and that indeed, armed government agents, nearly a dozen in number, stormed Ndoromo's apartment in the early morning hours, degraded and intimidated him by forcing him to stand

---

[1] By filing this Reply, defendant Ndoromo does not intend to waive the arguments put forth in his Motion to Strike the government's Opposition to his Motions, filed this date.

[2] "Opp." refers to the Government's Opposition to Defendant's Motion to Suppress Statements, to Suppress Physical Evidence and to Dismiss Indictment, and Points and Authorities in Support Thereof, filed on January 16, 2007.

exposed to the agents, male and female, and to any passerby, while they conducted a several-hour search of his apartment/office.

The government claims that this case is about Ndoromo's bilking the District of Columbia's Medicaid program for over a million dollars. Opp. 2-4. To date, no such evidence has been provided in discovery in this case. Records generated by the Medicaid program for the District of Columbia verify trips made by Ndoromo's company to transport Medicaid recipients to authorized providers. The records reveal that where authorization for transportation was required, authorization was obtained. It was only for the transportation of patients under the Mental Retardation and Developmental Disability Administration (MRDDA) program that no prior authorization was obtained. On information and belief, prior authorization was not required under the MRDDA contract. Evidence from the Medical Assistance Administration, the administrator of the District's Medicaid program, reveals that Ndoromo's company provided transportation to authorized recipients for hundreds of trips to Medicaid providers every year of its operation. If indeed the government has evidence of over one million dollars of false claims, it should turn the evidence over to the defense.

The government states that defendant was arrested on February 3, 2006, at a friend's home. In fact, he was at the home of his sister when he was officially arrested on February 3. When the facts and circumstances surrounding the search conducted in his home are presented to the court through witnesses, it will become clear that he was actually in custody, as that term has been interpreted by this circuit and other circuits, at the time of the execution of the search warrant and the questioning by agents.

**Argument**

**A. Ndoromo's statements were involuntary and were obtained by violation of his right to Due Process.**

1. <u>Ndoromo's waiver of rights was not knowing and voluntary and his statements made on December 22, 2004 should be suppressed.</u>

The evidence at a hearing on the Motion to Suppress Statements will show that Ndoromo was not free to leave his apartment at any time during the execution of the search warrant and the interrogation by agents. Armed agents, nearly a dozen in number, created an environment of fear and intimidation that gave Ndoromo the clear impression that he was not to deny the agent's request for information. The government claims that Ndoromo was not under arrest and was free to leave, suggesting that *Miranda* warnings might not have been required under those circumstances. At a hearing on this Motion, Ndoromo will demonstrate that the factor enumerated by the Supreme Court as indicative of arrest was present in this case - a restraint on freedom of movement associated with a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). *Miranda* warnings were required. But even with the warnings, the statements made by Ndoromo are involuntary. *Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004), relied upon by the government, does not validate the waiver in this case. *Seibert* dealt with the practice of a Missouri police department to question a suspect without giving *Miranda* warnings, and after the suspect confessed, to give the warnings and get the suspect to repeat the unwarned confession. The Court found the practice to violate the privilege against self-incrimination. Whether the suspect's statement was voluntary was not at issue.

Ndoromo's waiver of his right against self-incrimination was not knowing and voluntary,

as required by *Johnson v. Zerbst*, 304 U.S. 458 (1938).   Whether a waiver is knowing and voluntary is determined by reference to the totality of circumstances surrounding the waiver. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  Circumstances such as the length of the interrogation, the location of the interrogation, whether questioning was continuous, the age of the suspect, the mental health of the suspect, will dictate the court's determination of voluntariness.  *Colorado v. Connelly,* 479 U.S. 157 (1986).  Given the treatment of Ndoromo at the hands of the agents executing the warrant at his home/office, and the interrogation at the same time and location, the statements were not voluntary.  The government must prove that the statements were voluntary by a preponderance of the evidence.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

     2. <u>Ndoromo's claim of outrageous governmental conduct, if proven, provides an independent ground for suppression of the statements.</u>

     The Due Process Clause of the Fifth Amendment to the United States Constitution is violated by outrageous governmental conduct.  The government is not permitted to benefit from such conduct and suppression of evidence gained by outrageous methods is the court's answer to the government's abuse of power.  *United States v. Russell*, 411 U.S. 423, 432 (1973); *Rochin v. California*, 342 U.S. 165, 172 (1952).[3]

     The government characterizes Ndoromo's Fifth Amendment argument as "laughable," and his factual account as nonsensical.  Opp. 6.  The factual dispute will be resolved by this court at the hearing on the motion to suppress statements.

---

[3]The arguments advanced in section C below in support of Ndoromo's motion to dismiss the indictment apply with equal force to the suppression of statements on due process grounds.

The government contends that even if defendant's account is proven, he still cannot claim involuntariness because such conduct is not enough to warrant suppression. Opp. 6. The cases the government cites rest on far different factual scenarios. The totality of the circumstances supported the finding of voluntariness in those cases. In *Bliss v. United States*, 445 A.2d 625 (D.C. 1982), the defendant was repeatedly advised of his rights, he had a number of prior contacts with the criminal justice system, he was at the police station for only a half hour before confessing and there was no evidence of coercion or trickery.. The court enumerated the relevant circumstances in determining voluntariness: background, conduct and experience of accused, accused's prior experience with the legal system, the circumstances of the questioning, evidence of coercion or trickery resulting in the confession, and any delay between the arrest and the confession. Even given his earlier injury, the remaining factors argued for voluntariness, according to the court. *Id*. at 630-31. In *United States v. Yunis*, 859 F.2d 953 (D.C. Cir. 1988), the defendant, a native Arabic speaker, was given warnings of his rights in Arabic, he had nine years of formal education in Arabic and comprehended it without difficulty. Two doctors testified that while he may have had some persistent discomfort from his wrist injuries, he was very comfortable if he kept his wrists still. *Id*. at 959.

In contrast, English is not Ndoromo's first language, and the court can tell from his *pro se* pleadings in the civil case which is a companion to this case that he lacks facility in the language. He has never been arrested before. The criminal justice system is unknown to him. The environment in his home was coercive and the tactics of the agents were coercive. Under the totality of circumstances test, Ndoromo's statements on December 22, 2004 were not voluntary.

**B. Ndoromo's claim that the evidence obtained by search of his premises should be suppressed is meritorious.**

1. <u>The arguments advanced in section C below, with regard to the violation of Ndoromo's due process rights by agents executing the search warrant, are incorporated here</u>.

The arguments advanced in section C are equally applicable to Ndoromo's claim that the physical evidence should be suppressed because of a violation of Ndoromo's due process rights.

2. <u>That the agents exceeded the scope of the search warrant is an independent ground for suppression of all evidence not listed in the warrant</u>.

As attachment 1 to the Opposition, Schedule B, makes clear, many of the documents seized by the agents are not materials described in the warrant. The government claims that seizing immigration documents of Ndoromo's mother fits within the category of documents about employees and contractors. That justification does not withstand scrutiny. There is no category of the schedule that would cover his mother's immigration documents. Nor is there a category of the schedule that would cover his personal e-mail communications, or his computer research about the Sudan, his many appeals to foundations for funding to assist the Sudanese, his letters to Congress expressing concern about conditions in the Sudan and the plight of the Sudanese. These are but a few examples of the documents which Ndoromo contends were not covered by the warrant.

The particularity requirement for warrants enforces the Fourth Amendment's protection against unnecessary intrusions into privacy. The particularity requirement was designed to prevent general warrants, by requiring that the search should be as limited as possible. Even if the warrant is supported by probable cause, and the places to be searched and things to be seized

are described with particularity, the search must still be conducted in a reasonable way to comply with the Fourth Amendment.  *United States v. Heldt*, 668 F.2d 1238, 1256-57 (D.C. Cir. 1981), citing *Marron v. United States* , 275 U.S. 192, 196 (1927) and *Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971).  When the scope of the warrant is exceeded, suppression of the materials and documents not covered by the warrant is appropriate.  Flagrant disregard of the limitations of a search warrant can transform an otherwise valid search into a general one, thereby requiring the entire fruits of the search to be suppressed.  Isolated incidents of seizure outside the warrant will not call for suppression of all items seized.  *Id*. at1259.  The extent to which the agents in this case exceeded the scope of the warrant will determine the appropriate sanction.

**C. Ndoromo's Motion to Dismiss the Indictment is Based Upon a Valid Ground.**

1. <u>One ground upon which the indictment should be dismissed is outrageous governmental conduct</u>.

The defense of outrageous governmental conduct is waived under Federal Rule of Criminal Procedure 12(b) if not raised pretrial in a motion to dismiss.  *United States v. Pitt*, 193 F.3d 751,761 (3d Cir. 1999).

The District of Columbia Circuit has recognized the defense of outrageous government conduct.  In *United States v. Gavaria*, 116 F.3d 1498 (1997), the court cited *United States v. Russell*, 411 U.S. 423, 431-432 (1973), as the source of the doctrine that there may be situations in which the conduct of law enforcement agents is so outrageous that principles of due process would bar the government from invoking the judicial processes to obtain a conviction. The court recognized that the circumstances which would support the defense are rare, and that the defense is limited to conduct involving coercion, violence or brutality to the person, citing *United States v.*

*Kelly,* 707 F.2d. 1460, 1477, n.13 (1983).[4]  In *United States v. Walls*, 70 F.3d 1323 (D.C. Cir. 1995), the court noted that this circuit is among the majority of circuits recognizing the defense. Only two circuits do not, and two have expressed skepticism as to its viability. *United States v. Walls*, 70 F.3d at 1330, n. 3.  There is no question that physical brutality can support the defense. So too can psychological coercion. *United States v. Chin*, 934 F.2d 393, 398-99 (2d Cir. 1991), citing *United States v. Kelly,* 707 F.2d. 1460 (1983).  The court in *Chin* said that whether investigative conduct violates the due process clause turns on whether the conduct is so offensive that it shocks the conscience.  Exploitation of trust by a government agent encouraging defendant to purchase child pornography did not rise to such a level, the court said.

Dismissal of the indictment is an extreme remedy.  But it is an appropriate remedy when the conduct of the government calls for the severe sanction.  One example of conduct which would trigger dismissal is found in *United States of America v. Twigg*, 588 F.2d 373, 381 (3d Cir. 1978).  There the court found that the government's role in the crime itself, through its narcotics agents, was so pervasive that it violated due process and that prosecution of the defendants was barred.  Another example of the kind of conduct that could call for the sanction of dismissal is found in *United States v. Blanco*, 392 F.3d 382, 394-95 (9th Cir. 2004).  In that case, the question was whether the government had deliberately withheld evidence that its informant was receiving favorable immigration treatment because of his cooperation with the DEA, and that the visa permitting him to remain in the United States was a consequence of his informant status. The

---

[4]In *Gavaria,* defendant claimed that the government should have revoked his telephone privileges so he could not continue in the conspiracy, and that the government failed to protect his daughter from assault by a co-defendant.  The court held that the conduct was not outrageous. *United States v. Gavaria*, at 1534.

court remanded to the district court to have the information turned over to the defense, but warned that among the choices available to the court if the government refused was the sanction of dismissal for outrageous governmental conduct. In other cases, the courts have recognized the availability of the defense, but have concluded that it was not appropriate on the facts of the case. In *United States v. Nolan-Cooper,* 155 F.3d 221, 224-225 (3d Cir. ), the court said that the government's conduct was not outrageous on the facts of the case: the defendant, a Philadelphia attorney accused of laundering drug money, had a sexual encounter with the government's investigator. But the sex was not used for investigative purposes, it occurred at the conclusion rather than the beginning of the investigation, it was not at the behest or with the approval of supervising agents, and other agents were unaware of the occurrence. In so holding the court recognized the principle that the defense of governmental misconduct is viable, that it is based on the due process clause, and that it is applicable to egregious investigative misconduct.

The Third Circuit in *United States v. Voight*, 89 F.3d 1050, 1065 (3d Cir. 1996) considered whether the use of an acquitted co-defendant attorney as an informant was outrageous governmental conduct. The court concluded that it was not, because the attorney did not have a attorney-client relationship with the defendant. However, the court, citing *Rochin*, said that there is no doubt that the Supreme Court continues to recognize a due process claim based on outrageous law enforcement investigation techniques. The conduct must shock the conscience. A claim premised upon the deliberate intrusion into the attorney-client relationship by the government would be such a circumstance.

The Tenth Circuit also recognized the viability of the defense, in *United States v. Johnson*, 130 F.3d 1420, 1429 (10th 1997). The court held that the defense, based on the due process clause

9

of the Fifth Amendment, is appropriate when the government's conduct, considering the totality of the circumstances, is so shocking, outrageous and intolerable that it offends a universal sense of justice. See also, *United States v. Williams*, 372 F.3d 96, 112 (2d Cir. 2004).

   *2.  A second ground for dismissal of the indictment is that it does not apprise Ndoromo with reasonable certainty of the nature of the accusations against him.*

The government contends that it does not understand the arguments advanced in support of Ndoromo's motion to dismiss the indictment on this ground. Opp. 9. The indictment charges health care fraud, under 18 U.S.C. 1347, wire fraud in violation of 18 U.S.C. 1343, false statements relating to health care matters, in violation of 18 U.S.C. 1035(a)(2), and money laundering, in violation of 18 U.S.C. 1957. In addition, the indictment includes a forfeiture claim under 18 U.S.C. 982(a)(1) through (a)(7).

The primary lack of clarity in the indictment relates to the offense of health care fraud. The statute provides:

> Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice –
>
> (1) to defraud any health care benefit program; or
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.

The indictment does not spell out how Ndoromo is alleged to have perpetrated health care fraud. In conclusory fashion, the indictment relates that he submitted false invoices claiming for transportation services he had not provided. In some cases, the beneficiaries were deceased, they

never used his company's services, they had once used the services but discontinued, or they used the services but not to the extent claimed by Ndoromo. Indictment Count One, paragraph 17. In paragraph 18, the indictment alleges that Ndormo/VSCA claimed for unauthorized transportation, and in paragraph 19, that VSCA used medicaid beneficiary numbers to bill for transportation not actually provided. No specifics are provided in the indictment as to any of these allegations.

There are deficiencies in the indictment with regard to the other charges as well. In fact, the only allegations in the indictment which are set forth with specificity are as to the false statements claims, Counts Six through Eighteen. In those counts of the indictment, the government alleges that Ndoromo claimed for services for named beneficiaries that were not rendered, or were not authorized, in the total amount of $1914.00.

No other specific allegations of misconduct appear anywhere in the indictment. In Counts Two through Five, the wire fraud counts, the government claims that certain funds were wired to Ndoromo's bank account, but there are no allegations as to why these funds were not legitimate payments for services rendered. The dates of transfer, all in 2004, are May 6, August 23, October 6, November 11. Nothing in the indictment spells out any criminal activity occurring on these dates, or connected to these transfers. Likewise, with regard to Counts Nineteen through Twenty-six, the indictment alleges that certain financial transactions resulted from health care fraud or wire fraud, and lists eight transactions, dated Jan. 16, 2002, Apr. 21, 2003, May 24, 2003, July 3, 2003, Sept.15, 2003, Sept. 15, 2003 (2 transactions), April 2, 2004 and April 2, 2004 (2 transactions). Again there is nothing in the indictment to indicate what criminal activity underlay these transactions.

On this indictment, Ndormo is left to guess as to the specific allegations against him, with

11

the exception of the allegations in Counts Six through Eighteen. The indictment must set forth enough information to permit Ndoromo to defend against it, and to plead it as a bar in any future prosecutions for the same conduct. *Russell* v. *United States*, 369 U.S. 749, 763 (1962). The government has provided in discovery information about thousands of claims filed by Ndoromo's company. There is no way counsel or Ndoromo can intuit which of these claims are allegedly false. Nor is there any way for Ndoromo or his counsel to intuit which transportations were undertaken without proper authorization from the Medical Assistance Administration. Because the indictment does not comply with the rule that it must advise Ndoromo of the charges against which he must defend, and plead the conduct with sufficient specificity to avoid a subsequent prosecution and a violation of his rights not to be twice put in jeopardy for the same offenses, the indict is defective.

    3. <u>With regard to the third ground raised in the Motion to Dismiss, that the government has not provided to Ndoromo the documents it seized from him that support the transportation of patients for whom reimbursement was claimed, argument on that ground will be reserved pending further discovery.</u>

**Conclusion**

    For these reasons, and the reasons previously stated in the Motions, Ndoromo respectfully moves the court to grant the motions to dismiss statements, suppress physical evidence, and dismiss the indictment, following hearing on the evidentiary motions.

    This the 14th day of February, 2007.

Respectfully submitted,

/s/_____
Reita Pendry
D.C. Bar # 327775
Appointed Counsel for Akube Ndoromo
Post Office Box 480
Greenbelt, MD 20768
301-345-2328
301-345-2393 Facsimile
Rpendry@bellsouth.net

**CERTIFICATE OF SERVICE**

    I, Reita Pendry, do hereby certify that I have this day served a copy of the foregoing Reply to Government's Opposition to Defendant's Motions upon counsel for the United States by depositing a copy of same in the United States mail, postage prepaid, addressed to:
Roy L. Austin, Jr., Esq., Office of the United States Attorney, Fraud & Public Corruption Section, 555 4th Street, NW, Washington, DC 20530, and by electronic service.  This the 14th day of February, 2007.


/s/_____
Reita Pendry