Copies to: Judge
AUSA - Special Proceedings
Dft.

UNITED STATES COURT OF APPEALS FOR
THE DISTRICT OF COLUMBIA CIRCUIT

~~Appeal No. 08-3026~~
~~Civil Action No 1:08-cv-285~~
Criminal No. 1: 06-cr-00019-EGS
(~~Appeal No. 07-3118~~)
(~~Appeal No. 07-5370~~)

**FILED**
JUL 2 6 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

AKUBE W. NDOROMO

Petitioner

v.

UNITED STATES OF AMERICA

Respondent

**SUPPLEMENTARY PETITION CHALLENGING DISTRICT COURT'S RULING DISMISSING SECTION 2255 FOR ILLEGALLY CONVICTION TO BE VACATED OR SET ASIDE AND ILLEGALLY DETENTION IN DISTRICT OF COLUMBIA FOR IMMEDIATE RELEASE UNDER § 2255 AND REHEARING EN BANC. <u>SEE</u>, Fed. R. App. P.41(b); D.C. CIR. Rule 41**

The petitioner as Pro Se, bringing this supplemental petition for rehearing en banc. <u>See</u> Fed. R. App. P. 41(b); D.C. Cir. Rule 41, and for Section 2255. The petitioner received this order on June 18, 2008, and file for petition for Section 2255 on June 24, 2008, but the Law Library was closed since June 24, 2008 and reopen on July 01, 2008. This is some of very important information missing in Section 2255.

**The Petitioner in this case was been denied Due Process of Law and Due Process of Law is a right not privilege and the Petition has been denied equal protection of law and equal protection of law is a pledge not a right.**

1

Due process denial of equal protection of law by District Court of District of Columbia was not "**ERRONEOUS RULING**" as mentioned by Court of Appeal for the District of Columbia Circuit on **JUDICIAL COMPLAINT No. 08-08**. In motions hearing in all the Akube's procedures before this, Court the Equal protection of Law was denied and Due Process was also denied.

On March 21, 2007, Motions Hearing the Court block Akube Ndoromo's witnesses from testifying, only one witness was allowed and the ineffective counsel never object to it, but according to Court he doesn't believe Akube's testimony or his witnesses. Compare to law enforcement testimony. In *pilley v. Harris*, 465 U.S. 37 (1984) Also, *Murray* v. *Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986).

On March 30, 2007 Government argument was presented to Jury and they found Akube Guilty. Eleven months later Akube was not ,  stenance and on 02/19/2008, he filed for Section 2255, and was schedule for hearing 06/18/2008. During 06/18/2008 hearing on Dockets # 78, 60, 83, 49, 92, 49, and 91 was denied by Court. The Court denied Akube's due process for the third time.

*Tayor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) Sixth Amendment compulsory process Clause includes not only the right to subpoena witnesses but also the right to present them in defense. However, this does not create a complete bar to preclusion of testimony of defense witness.

## BRIAN EVANS PEJORATIVES TESTIMONY

The Court: let me speak with counsel at the bench for second. The Court: All these things are in. He doesn't have any personal knowledge of these things. Ms. Pendry: that's my point, your honor. Mr. Austin: He used these to make a CHART of how much money. The Court: Yes. The Court: Admitted Government exhibit number 76-80. Mr. Austin : Question to Governments Key Brian Evans. Q. Using the documents I just went through right now Answer. Yes. Transcripts 03/28/2007, Pages 133, 134.

Government Q. So the total Amount Voice of Social Concern Association (VSCA) billed for Lynette Turner was how much? And she was billed for how much? A: she was billed for $13, 602. the first date is 2/13/2002, and that runs through a final date of 3/3/2004, trial transcripts 03/28/2008, pages 133-136.

However, see Lynette Turner in Superseding indictment docket entry # 3 Entry Date 02/01/2006, page 10 "counts" 6 and 7 run date are 2/5/2004, 2/13/04, 2/17-18/04, 2//9-12//04 in Amount of $297

Let's move to exhibit number 109-115, did you create a chart for Ms. Sylvia Smith, A: Yes. For payment on 6/24/04, 6/25/04, 628-30/04, 7/1-2/04, 7/6-7/04, . Q: and

2

how much was VSCA paid for Sylivia Smith? A: $13, 228.50. Transcripts 03/28/2007 pages 137, and 138.

However, see Sylivia Smith, in Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, page 11 Count 15 and 16, dates are 6/6/24-25/04, 6/28-30/04, 7/1-2/04, 7/6-7/04: paid Amount $297

Mr. Austin: and so I believe we're on Government's exhibits 89 through 94 and 89 shows and end date to billing for 1/1/2004, for Ms. Boyd. Paid $10, 794 between 1/1/2002, and 4/21/04 Transcripts 03/28/2007 page 141.

However, see Ms. Boyd, in Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, Page 10 Counts 9 and 10 run dates: 03/30-31/04, 4/1-4/04, 4/5-7/04 Paid Amount $0,000.

Government and going back to exhibits 81-86 and 88, these show billing records and information concerning Khatrina Foster. Specifically the date 2/27/04, 3/1/04, 3/2/04, 3/3/04, and was Paid $13, 818 Transcripts 03/28/2007 Page 141

However, see Khatrina Foster in Superseding indictment Docket Entry # 3, Entry Date 02/01/2006, Page 10, Count 8 runs dates 2/17/04, 3/1-4/04, Amount Paid $132

Mr. Austin: now, the Government will enter in evidence exhibit number 95-102. and these are documents concerning Janet Burness. Was paid $13,595 for start date of 06/03/2002 and date of 05/19/2004,

However, see Janet Burness, in Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, run dates 3/18-19/04, 3/22-25/04, 3/26/04, 3/29-31/04, Counts 11 and 12 page 11 Amount Paid $396.

Government's exhibit 131 is a Chart showing that the VSCA billed Medicaid in the amount of $3,931.50 for a person by the name of Gloria Allen and was paid $3,403.50 from June 5, 2003 through October 22, 2003, Transcripts 03/28/2007 page 145.

But see the Superseding indictment no Count for Gloria Allen. Also see Count 13 and 14 CK Page 11 in Superseding indictment were not proven before the Petit Jury.

Mr. Austin Q: did Government go through three different exhibits and those would be exhibits 21-23 in order to determined the number of prior authorizations the defendant obtained through Medicaid. Government Witness, Brian Evans A: that's correct. Q: and did you create a Chart that is Government's exhibit. And is that a Chart that you created? A: Yes. But see the Superseding indictment there is no language of authorization Transcripts 03/28/2007 page 153.

3

Government Q: page of exhibit 134 is what? A: this is credit into a CD account for VSCA account number 91000006580436 for the amount of $20,000 receipt into account number ending 0436 for $20,000 on 1/16/2002. The Court summary, that's all it is, summary testimony. Transcripts page 148-150.

However, see Bank accounts: in Superseding indictment Docket Entry # 3, Entry Date 02/02/2006, page 4 and 5, there were 8 accounts without any cash mentioned at them and it is not two accounts only.

## HEALTH DEPARTMENT CHIEF ASSISTANT CLEARING AKUBE AND VSCA FROM ANY HEALTH CARE ACCUSATIONS.

The health Department testimony had cleared Akube and VSCA from any criminal accusation in this procedure, but it was a Government robbery and conspiracy to harm a victim they rob.

Q: And what are your job duties with respect to being deputy chief? A: I oversee the day-to-day operations of program operations and conduct reviews of our fiscal agent, monitor them, make sure that they're following the contract and processing claims for Medicaid. Q: And with respect to First Health. Are you familiar with how First Health dealt with transportation providers? A: Yes. I wasn't personally involved, but I was responsible for the manager and the supervisor that ran that program.

Q: Now, the data that you looked at, how is that data created? A: the data is stored by ACS, who is the fiscal agent for the D.C. Government Medicaid. The claims are entered into a system and maintained in their files. At any point, when we need for investigation purposes or helping a provider reconcile their claims, we can ask ACS to pull from their files all of the claims information for a specific provider or a specific recipient.

Q: The claims information that is contained within that file how is that claims information created? A: A provider submits the claim to ACS, either on paper or electronically. If it's on paper, we have a data entry operator that keys the information from the claim into the Medicaid system where it's stored. Electronically it comes in, is processed and is stored as well.

The Court: What is that data? The Witness: it's claim specific. It gives recipient IDS, recipient dates of service, the name, what the service was, how much was billed, how much was paid, and then it has a unique claim control number assigned to it, which is how we track claims.

The Court: And then what do you do with it? You compile all that data and then what do you do wit it? The Witness: Well, we use it in the system for any other claims that may come in. We run what we call a duplicate check to make sure the claims have not been previously submitted. We use it for funding. We sometimes have to do analysis to see how many times a particular procedure code has been billed, what the billed amounts were, maybe we need to raise the reimbursement amounts, we need to provide more

4

reimbursement to providers better services for the recipients of D.C. There's number of reasons. Sometimes we use the data in asking for more funding from the Federal Government. We show need.

Q: And that is called provider number 019768400. What is that data file? What is contained in data file? A: that's also a claims detail specific to that provider number, nonemergency transportation, for fee for service clients. Q: And what are the different tabs that appear if one were to look at the screen? A: Now you're testing my memory, and I don't know the exact order. But on a normal claims detail what we provide are recipient IDS, recipient names, dates of service, the procedure code that details and describes what service was provided, the amount billed, the amount paid and a claims parole number, which is a unique number that we assign to every claim that comes in for processing. Q: Who could be transported to PIDARC? A: Who could or could not? Q: Who could? A: Any medical ---a recipient receiving medical service from PIDARC that was enrolled in D.C. Medicaid and eligible. Q: who was eligible for transportation service, just anyone on Medicaid or did you have to meet a specific criteria? A: No, it was anyone that was a Medicaid recipient that was not in a managed care organization.

Q: And let me show you what is page 191 of that exhibit. Now, what do five and six and seven indicate? A: Five is instructing transportation providers that they must verify Medicaid eligibility on a client before transporting them. An authorization is not a guarantee of payment. They have to also make sure that the recipient's eligibility is valid for the date of service. See Trial Transcripts 03/28/2007, pages 56-69, and 73.

## INEFFECTIVE ASSISTANT OF COUNSEL AND DENIAL OF DUE PROCESS

Ms. Pendry: I'm not trying to be difficult. I've seen all of these documents in some form, but I don't know what number is attached to what document. And when he brings me over a sheet this high, I don't know what they are. The Court: Do you have it in summary form? Mr. Austin: She has an exhibit list from the first day of trial. And then the beginning of yesterday we provided her with the documents in order on that exhibit form. Ms. Pendry: At the end of the day yesterday, he gave me a Xerox box full of papers, which I could not carry home on the metro. I have not had a chance to look at it. If he would just give me these folders, I could look at them in two minutes. (Will she be able to look at the whole box in two minutes?). Trial Transcripts 03/28/2007, Page 139.

*Kyless v. Whitley*, 514 U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) The government has the duty to disclose exculpatory evidence even in the absence of a request, if the withheld evidence considered as a whole, results in a reasonable probability" that a different result would have obtained. The defendant does not need to show that with the evidence a different result was probable but only that the suppression of the evidence undermined confidence in the outcome of the trial." The obligation exists regardless of the good or bad faith of the prosecutor and even if the police have failed to disclosed the evidence to him.

Once this is found, there is no need for harmless error review because the test is that same. Also, the suppressed evidence is not to be considered item by item but collectively. Prosecutors should resolved doubtful questions in favor of disclosure.

**Wherefore**, the District Court of the District of Columbia decisions were based on denial of equal right protection and denial of due procedures to the petitioner. The government was hiding criminal activity that was or were performed by government. The Court, Government, and Defense counsel conspire to convict In re Mr. Ndoromo to them to have a free hand to his funds and to government to get away from criminal violation without due process of the law. This is why the petitioner must be given Rule 29, and due process of the law has turn against government violations.

Pro se,

Date 07/01/2008

Akube W. Ndoromo
DC #309364
CCA/CTF Prison
1901 E Street SE
Washington, DC 20003

**I hereby, satisfy under penalty of perjury that on going Complaint is true to the best of my knowledge.**