UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Copies to: Judge
AUSA - Special Proceedings
Dft

UNITED STATES OF AMERICA

v.                                                      : Criminal No. 06-019- (EGS)

                                                        FILED

AKUBE W. NDOROMO et al                                  AUG 13 2008

                                                        NANCY MAYER WHITTINGTON, CLERK
                                                        U.S. DISTRICT COURT

**PRE-SENTENCE REPORT IN THIS CASE WILL ONLY BE UNDER RULE 32 (c) (1) (A) AND RULE 32 (h) and Violation of Rule 32.2**

The *Pro Se* defendant is contending that due to the constitutionally violations whereby, he was denied due process and equal protection of the law in this case and he asking this case to be remanded for a new trial or acquittal of the defendant under Rule 32 (h). The court has delayed defendants sentencing since 03/30/2007 to October 02, 2008 violating his due process and violation of Rule 32 which required sentence within 90 day of conviction unless circumstances arise under Titles 18 U.S.C. § 3553 or 18 U.S.C. § 3593 (c), which in this case has not existed. Which means District Court has forfeit their time to sentence the defendant.

The Health Care statute requires; Health care Fraud taken to trial only if there was health care provider claiming loses, damages, or injuries See id.§ 8.01-581.1; See id.§ 32.1 and Virginia Code; Va. Code Ann. § 54.1-2403.3 (2006). In addition, in doctrine of Nguyen v. Voorthusis Opticians, Inc., 478 F.Supp.2d 56, 2007 WL 853115,, D.D.C. March 21, 2007. (Fe.d585, determination of Loss caused by crime involving fraud or deceit Under United States Sentencing Guidelines § 2F1.1 (U.S.S.G)).

1

## Due Process and Equal Protection Denial

On March 21, 2007, Motions Hearing the Court block Akube Ndoromo's witnesses from testifying, only one witness was allowed and the ineffective counsel never object to it, but according to Court he doesn't believe Akube's testimony or his witnesses. Compare to law enforcement testimony. On the day of trial 03/26-29/2007, Akube was denied due process and equal protection of the law to present his defense. In *pilley v. Harris*, 465 U.S. 37 (1984) Also, *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986).

On March 30, 2007 Government argument was presented to Jury and they found Akube Guilty. Eleven months later Akube was not sentence and on 02/19/2008, he filed for Section 2255, and was schedule for hearing 06/18/2008. During 06/18/2008 hearing on Dockets # 78, 60, 83, 49, 92, 49, and 91 was denied by Court. The Court denied Akube's due process for the third time. *Tayor v. Illinois*, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) "Sixth Amendment compulsory process Clause includes not only the right to subpoena witnesses but also the right to present them in defense. However, this does not create a complete bar to preclusion of testimony of defense."

## Governments Violation of Rule 32.2

The Government knowingly and intentionally on 12/21/2004 before Indictment seized Eight Bank Accounts totaling $1.2 Million in reference to 18 U.S.C. § 2113 (a) using illegal warrants in *U.S. v Wilem, 80 F. 2d 116, 121-22 (4th Cir. 1996)*. In Violation of Rule 32.2. In violation of Banking Insurances Act 12 U.S.C. § 1812, and §1813. In violation of Health Care Fraud 18 U.S.C. §§ 1347, 1035 (a) (2) and 982 (a) (7). Also in violation of Wire Fraud 18 U.S.C. § 1343, in violation of Mail Fraud 18 U.S.C. § 1341,

2

and in violation of Money laundry 18 U.S.C. §§ 1956, 1957. In violation of **Fourth, Fifth, and Sixth Amendments.** *See,* **Superseding Indictment Docket Entry # 3 Entry Date 02/01/2006 Page # 4, (Bank Accounts) Government's falsely mislead the Grand Jury that Mr. Ndoromo still have those accounts (funds).**

## PROSECUTOR ROY AUSTIN PERJURY TESTIMONY (LIE) FROM MARCH 26-29, 2007.

### Count 1 AND 6-16

The Government: So what did he do with this money? Well, he claimed that what he was doing was he had set up a nonprofit, a charitable organization, to help his homeland of Sudan. The name of his company was Voice of Social Concern Association, Incorporated. And he claimed that that's the money was for. Docket Entry # 67. Trial Transcripts 03/26/2007 Page 149.

The Government: Well, first of all, you will see the checks going into the defendant's account for the most part, except for when on occasion he decided to buy something for himself, such as a Land Rover, a $40,000 car he paid $35,000 cash for. **And at the end of the day after law enforcement officers seized that money there was still $1.2 million sitting in the defendant's accounts."** *See, U.S. v. Kleinbart, 27 F.3d 586 (D.C. Cir. 1994)* ("causeway and prejudice standard applied when petitioner challenge to improper jury instructions") *See,* trial transcripts March 26, 2007 Docket # 67, Page: 149.

The Government: "I can't remember whether it was Mr. Philip or Mr. Rajj whose transmission blew $2,000. Will the defendant pay that for him? No. Absolutely not. The man is sitting on $1.2 million at the end of the day. He doesn't have enough money to pay for the transmission on one of his own vans? That's why it was a mistake for these people to work for him. **That's why we are here today."** *See,* the Indictment Docket Entry # 3, Entry Date 02/01//2006 *See, also,* Trial transcripts March 29, 2007, Page 76, Docket Entry # 70, Entry Date 11/30/2007.

The Government: "Yes, the government got up here before you and said **$1.8 million** and repeated **$1.8 million** again and again and again, because that's the amount of fraud here, that's the evidence here. It's **$1.8 million** minus about **$6,000**." *See,* the indictment Docket Entry # 3 Entry Date 02/01/2006. Also, *See,* Docket Entry # 69. Trial Transcripts March 28, 2007, Page 101.

Ms. Pendry: objection. Pejorative. The Court: "I'm sorry?" Ms. Pendry: It's pejorative. He's not arguing the evidence." The Court: "I'll allow it. It's argument. It's not evidence, it's argument." (The Court says it is argument it is not evidence, but what is argument that defense counsel mean?) The Government: "He used everybody. Every single person he could to get rich he used them. He used them whether they were alive or

3

dead. He used them because they made him into millionaire. *See,* Trial transcripts March 29, 2007, page 70 Docket # 70 Entry Date 11/30/2007. *See,* the Superseding Indictment Docket Entry # 3, Entry Date 02/01/2006, (the indictment is not about getting rich or millionaire).

Mr. Austin: The 15 percent did not go to taxes, as you know, because a witness stand and told you that he still had to file for his own taxes. They paid for their own gas, yet on his 990, his form; he's writing that $10,000 was spent on gas. Do the quick math there. You have about $50 a day for 200 days out of a year. It was intentionally, it was knowing, it was wrong, it was fraud, it was a crime. Docket Entry # 69. Trial Transcript March 28, 2007 Page 76. *See* Superseding Indictment Docket # 3. Entry Date 02/01/2006. There are no charges of that kind or language of that kind.

**"The Government Calls Patricia Squires. Patricia Squires, Government's Witness, Sworn Direct Examination by Mr. Austin." However, see how Government witness clear Akube Ndoromo and VSCA from any Health Care Charges March 28, 2007.**

## FURTHER COUNT 1 AND 6-16

The Government: And what are your job duties with respect to being deputy chief? Witness: I oversee the day-to-day operations of program operations and conduct reviews of our fiscal agent, monitor them, make sure that they're following the contract and processing claims for Medicaid.

The Government: And with respect to First Health. Are you familiar with how First Health dealt with transportation providers? Witness: Yes. I wasn't personally involved, but I was responsible for the manager and the supervisor that ran that program.

The Government: Now, the data that you looked at, how is that data created? Witness: the data is stored by ACS, who is the fiscal agent for the D.C. Government Medicaid. The claims are entered into a system and maintained in their files. At any point, when we need for investigation purposes or helping a provider reconcile their claims, we can ask ACS to pull from their files all of the claims information for a specific provider or a specific recipient.

The Government: The claims information that is contained within that file how is that claims information created? Witness: A provider submits the claim to ACS, either on paper or electronically. If it's on paper, we have a data entry operator that keys the information from the claim into the Medicaid system where it's stored. Electronically it comes in, is processed and is stored as well.

The Court: What is that data? The Witness: it's claim specific. It gives recipient IDS, recipient dates of service, the name, what the service was, how much was billed, how much was paid, and then it has a unique claim control number assigned to it, which is how we track claims.

4

The Court: And then what do you do with it? You compile all that data and then what do you do wit it? The Witness: Well, we use it in the system for any other claims that may come in. We run what we call a duplicate check to make sure the claims have not been previously submitted. We use it for funding. We sometimes have to do analysis to see how many times a particular procedure code has been billed, what the billed amounts were, maybe we need to raise the reimbursement amounts, we need to provide more reimbursement to providers better services for the recipients of D.C. There's number of reasons. Sometimes we use the data in asking for more funding from the Federal Government. We show need.

The Government: And that is called provider number 019768400. What is that data file? What is contained in data file? Witness: that's also a claims detail specific to that provider number, nonemergency transportation, for fee for service clients.

The Government: And what are the different tabs that appear if one were to look at the screen? Witness: Now you're testing my memory, and I don't know the exact order. But on a normal claims detail what we provide are recipient IDS, recipient names, dates of service, the procedure code that details and describes what service was provided, the amount billed, the amount paid and a claims parole number, which is a unique number that we assign to every claim that comes in for processing.

The Government: Who could be transported to PIDARC? Witness: Who could or could not? The Government: Who could? Witness: Any medical ---recipient receiving medical service from PIDARC that was enrolled in D.C. Medicaid and eligible.

The Government: who was eligible for transportation service, just anyone on Medicaid or did you have to meet a specific criterion? Witness: No, it was anyone that was a Medicaid recipient that was not in a managed care organization.

The Government: And let me show you what is page 191 of that exhibit. Now, what do five and six and seven indicate? Witness: Five is instructing transportation providers that they must verify Medicaid eligibility on a client before transporting them. An authorization is not a guarantee of payment. They have to also make sure that the recipient's eligibility is valid for the date of service. **See Docket Entry # 69, Trial Transcripts 03/28/2007, Pages 56-69, and 73.**

## GOVERNMENT'S KEY WITNESS BRIAN EVANS PEJORATIVE TESTIMONY (LIE) March 28, 2007 COMPARE THE INDICTMENT TO CHARGES PRESENTED TO PETIT JURY

The Court: let me speak with counsel at the bench for second. The Court: All these things are in. He (Akube Ndoromo) doesn't have any personal knowledge of these things. Ms. Pendry: that's my point, your honor. Mr. Austin: He used these to make a CHART of how much money. The Court: Yes. The Court: Admitted Government exhibit number 76-80. Docket Entry # 69, Trial Transcripts 03/28/2007, Pages 133, and 134.

**COUNTS 6 AND 7**: The Government:  So the total Amount Voice of Social Concern Association (VSCA) billed for Lynette Turner was how much?  And she was billed for how much?  Witness: she was billed for $13, 602. The first date is 2/13/2002, and that runs through a final date of 3/3/2004, Docket Entry # 69 Trial transcripts 03/28/2008, Pages 133-136.

**COUNTS 6 AND 7:** However, *See* Lynette Turner in Superseding indictment docket entry # 3 Entry Date 02/01/2006, Page 10 "counts" 6 and 7 run date are 2/5/2004, 2/13/04, 2/17-18/04, 2//9-12//04 in Amount of $297.

**COUNT 8:** Mr. Austin: Government and going back to exhibits 81-86 and 88, these show billing records and information concerning Khatrina Foster.  Specifically the date 2/27/04, 3/1/04, 3/2/04, 3/3/04, and was Paid $13, 818, Docket Entry # 69, Transcripts 03/28/2007 Page 141

**COUNT 8:** However,  *See* Khatrina Foster in Superseding indictment Docket Entry # 3, Entry Date  02/01/2006, Page 10, Count 8 runs dates 2/17/04, 3/1-4/04, Amount Paid $132.

**COUNTS 9 AND 10:** Mr. Austin: and so I believe we're on Government's exhibits 89 through 94 and 89 shows and end date to billing for 1/1/2004, for Ms. Boyd.  Paid $10, 794 between 1/1/2002, and 4/21/04 Docket Entry # 69, Transcripts 03/28/2007 Page 141.

**COUNTS 9 AND 10:** However, *See* Ms. Boyd, in Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, Page 10 Counts 9 and 10 run dates: 03/30-31/04, 4/1-4/04, 4/5-7/04 Paid Amount $0,000.

**COUNTS 11 AND 12:** Mr. Austin: now, the Government will enter in evidence exhibit number 95-102, and these are documents concerning Janet Burness.  Was paid $13,595 for start date of 06/03/2002 and date of 05/19/2004, Docket Entry # 69, Trial Transcripts March 28, 2007, Page 142.

**COUNTS 11 AND 12**: However, *See* Janet Burness, in Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, run dates 3/18-19/04, 3/22-25/04, 3/26/04, 3/29-31/04, Counts 11 and 12, Page 11 Amount Paid $396.

**COUNTS 13 AND 14:** Mr. Austin: The Government now admits Government's exhibits 103-108 concerning Cornelius knowlton.  Date June 24, 2004 through June 29, 2004. June 30, 2004 through July 5, 2004.  VSCA was paid a total of $21,846.50 from September 23, 2002 through November 15, 2004. *See* Docket Entry # 69.  Trial Transcript March 28, 2007, Page 142.

**COUNTS 13 AND 14:** However, *See* Cornelius Knowlton in Superseding Indictment Docket Entry # 3 Entry day 02/01/2006 page 11 Count 13, and 14. Run dates are 6/24-29/04, Paid amount in $198, and run Date 6/30/04, 7/1-5/04 Paid amount in $198. Total amount Paid $396.

6

**COUNTS 15 AND 16:** Government: Let's move to exhibit number 109-115, did you create a chart for Ms. Sylvia Smith, Witness: Yes. For payment on 6/24/04, 6/25/04, 628-30/04, 7/1-2/04, 7/6-7/04. The Government: and how much was VSCA paid for Sylivia Smith? Witness: $13, 228.50. Docket Entry # 69, Transcripts 03/28/2007 Pages 137, and 138.

**COUNTS 15 AND 16:** However, *See* Sylivia Smith, in Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, page 11 Count 15 and 16, dates are 6/6/24-25/04, 6/28-30/04, 7/1-2/04, 7/6-7/04: paid Amount $297

**COUNTS 19-26:** *See* superseding indictment Docket Entry # 3 Page 12 about Money Laundry counts came from "Health Care and Wire Fraud. Go back to Superseding indictment Page 9, **Counts 2-5** charges for wire Fraud were dropped. The Money Laundry automatically will be bared from sentence. Again, go back to page 12 of Superseding indictment "financial institution, affecting interstate or foreign commerce, in criminally derived property of value greater than $10, 000," but Health Care Fraud is only $1,518. *See,* Superseding Indictment Page 10 and 11 Health Care Fraud Counts 6-16.

**ILLEGALLY COUNT:** Mr. Austin: Government's exhibit 131 is a Chart showing that the VSCA billed Medicaid in the amount of $3,931.50 for a person by the name of Gloria Allen and was paid $3,403.50 from June 5, 2003 through October 22, 2003, Docket Entry # 69, Transcripts 03/28/2007, page 145.

**LEGALLY COUNT:** *See* the Superseding indictment Docket Entry # 3 no Count for Gloria Allen or language in Superseding Indictment about Gloria Allen.

**ILLEGALLY COUNT:** Mr. Austin: Government's Exhibits 125-130 concern a patient by name Gwendolyn Moore. It shows on Government's exhibit 129 that VSCA billed Medicaid for $25,684 for Ms. Gwenndolyn Moore and was Paid $23,679 between September 23, 2002 through November 15, 2004. Government's exhibit 130 is a chart created concerning payments to Ms. Gwendolyn Moore showing a total amount of $525 paid to Gwendolyn Moore by the VSCA.

**LEGALLY COUNT:** *See* the Superseding indictment Docket Entry # 3 Entry Date 02/01/2006, there is no count about Gwendolyn Moore or any language about Gwendolyn Moore.

**ILLEGALLY COUNT:** Mr. Austin: did Government go through three different exhibits and those would be exhibits 21-23 in order to determined the number of prior authorizations the defendant obtained through Medicaid. Government Witness: that's correct. Government: and did you create a Chart that is Government's exhibit. And is

7

that a Chart that you created? Witness: Yes. *See* Docket Entry # 69. Trial Transcripts 03/28/2007 Page 153.

**LEGALLY COUNT**: *See* the Superseding Indictment Docket Entry # 3 there is no language of prior authorizations inside or any count about prior authorizations.

**ILLEGALLY CHARGES**: The Government: "Yes, the government got up here before you and said **$1.8 million** and repeated **$1.8 million** again and again and again, because that's the amount of fraud here, that's the evidence here. It's **$1.8 million** minus about **$6,000**." *See*, Docket Entry # 69. Trial Transcripts March 28, 2007, Page 101.

**LEGALLY CHARGES**: *See* Superseding Indictment Docket Entry # 3, Date 02/01/2006. Pages 10, and 11, counts 6-16, the total amount charges in **Health care Fraud was $1,518**.

**ILLEGALLY CHARGES**: Mr. Austin: Government page of exhibit 134 is what? Witness: this is credit into a CD account for VSCA account number 91000006580436 for the amount of $20,000 receipt into account number ending 0436 for $20,000 on 1/16/2002. The Court summary, that's all it is, summary testimony. *See* Docket Entry # 69. Trial Transcripts March 28, 2007 Page 148-150.

**LEGALLY CHARGES**: *See* Bank Accounts in Superseding indictment Docket Entry # 3, Entry Date 02/02/2006, page 4 and 5, there were 8 accounts without any cash mentioned at them and it is not two accounts only, AND IS NOT A COUNT.

### ROBERT JODOIN, GOVERNMENT'S WITNESS, SWORN DIRECT EXAMINATION BY GOVERNMENT, BUT IS NOT IN THE SUPERSEDING INDICTMENT AND IS NOT A CHARGE

### ILLEGAL PROSECUTION OR ILLEGAL CHARGE

The Government: Good Morning, Sir: Witness: Good Morning. The Government: Could you please introduce yourself to the ladies and gentlemen of the Jury? Witness: My name is Robert Jodoin. The Government: Sir, how are you presently employed? Witness: I am employed at the U.S. Attorney's office Washington, D.C. The Government: And what do you do at the U.S. Attorney's Office in Washington, D.C.? Witness: I am an auditor in the fraud and public corruption section.

The Government: And what is a 990? Witness: Just as individuals in corporations have to file an annual tax return, tax-exempt organizations, or at least most tax exempt organizations, have to final an annual return, and that is a 990. And 990 is mainly an informational return, it's not.

The Government: What is in the document? What does it state? Witness: Reviewing the 2001 990 it states his gross reviews that they received for the year. It shows the balance

8

sheet. There's numerous yes or no questions that he would have to answer. And it also shows what the purpose of the not for profit is.

The Government: And how much money did the general ledge indicates was spent? Witness: I believe that's an error on the general ledge. It states $108,000, but it looks like $10,800. The Government: And you believe it is an error when it says $108,000 and it really appears to be $10,800 worth of gas? Witness: Yes. But, Again that's my personal.

All the above perjury was objected by the defense counsel, but the Court disagree with

the defense counsel and allowed the illegally evidence to be presented to the petit Jury.

Docket Entry # 69 Trial Transcripts March 28, 2007, Pages 40-43 and 45, 49, 50, 53, 55.

### Enhancements will be illegally

"**Adjustment for Obstruction of justice: The defendant perjured himself during testimony given on March 21, 2007, therefore two levels are added. USSG +2**", but *See* transcripts; Four of Government witnesses are mental retarded and have track criminal records, the government did not provide Mr. Ndoromo with psychiatric report or criminal report; **second, government hid the only security guard saw Mr. Ndoromo naked.**

Defense counsel Questions: "Do you remember the name of the security person with whom you were dealing?" Government witness Brain Evans: "I do not." Defense Counsel: "Would you have that in your records anywhere?" Mr. Austin: "I'll object, your honor, to relevance." Counsel: "your honor, I think he said he –I think he testified that at some point the security, he checked in with the building security." Defense Counsel: "Would you have in your records anywhere the name of the security person that had the key?" Brain Evans: "I'm not sure." *See*, Motion Hearing March 21, 2007, page 32 Docket Entry # 66, Date Entry 11/30/2007).

The Government: "How was Mr. James dressed when he was handcuffed?" Brain Evans, Government witness: "When he answered the door, he was in white underwear. And he was handcuffed and sat down at the table. And then agents after five minutes received cloths, pants, and shirt for him." (Mr. Ndoromo has no white underwear in his life, and there is a witness about that and government has no pictures, video tape, or independent witness to backup their claim). Docket Entry # 66 Page 21.

### Government's Influence on Judge

The judge granted government's opposition motion release because speaks about "defendant an immigrant of Sudanese descent." **The Government further states that (Susan B. Menzer,) "based upon these convictions, the court could sentence defendant to 145 years in prison."** See Docket Entry # 57, **Two months later, Susan B. Menzer and Ellen C. Epstein) government filed to Court of Appeals for the**

9

**District of Columbia Circuit that the crime level is 20 and court will sentence defendant to 33-44 months in prison knowingly this said presentation is untrue.** In reference to 18 U.S.C. § 1001, §1505, § 1518 and §1621 and *See*, 18 U.S.C. § 1347, but the judge believe it to be true because defendant is from Sudan in *U.S. v. $292,888.04 in US Currency*, 54 F.3d 56, 566 (9th Cir. 1995). Section 455 requires Judge to disqualify self *Sua Ponte* if impartiality reasonable questioned or if Judge has personal bias.

"Generally, newly discovered evidence will not entitled defendant to new trial unless evidence provably would produce different result; however, if Government used FALSE TESTIMONY and KNEW or SHOULD HAVE KNOWN OF ITS FALSITY, NEW TRIAL MUST BE HELD if there was any reasonable likelihood that false testimony affected judgment of JURY" *U.S. v. MMR Corp.*, C.A. 5 (LA) 1992, 954 F.2d 1040.

Even before *Brady*, the Supreme Court created duty for the prosecutor to disclosed perjured testimony. Due process is violated any time perjured testimony is procured by the prosecutor. *See Mooney v. Holoham*, 294 U.S. 103 (1935); *Hawthorne v. United States*, 504 A.2d 580, 589-90 (D.C. 1986); *United States v. Cuffie*, 80 F.3d 514 (D.C. Cir. 1996). Solicitation of the perjury is not required; even when the perjury comes completely on the whim of the witness, if the prosecutor knows it is false, there is a duty to disclose. *See Alcorta v. Texas*, 355 U.S. 28 (1957).

## INEFFECTIVE ASSISTANT OF COUNSEL RITA PENDRY AND DENIAL OF DUE PROCESS

The Court: all these things are in. He (Akube Ndoromo) (March 28, 2007 third day of trial) doesn't have any personal knowledge of these things. Ms. Pendry: that's my point, your honor. Ms. Pendry: I am not trying to be difficult. I've seen all of these documents in some form, but I don't know what number is attached to what document. And when he brings me over a sheet this high, I don't know what they are. The Court: Do you have it in summary form? Mr. Austin: She has an exhibit list from the first day of trial. And then the beginning of yesterday we provided her with the documents in order on that exhibit form. Ms. Pendry: At the end of the day yesterday, he gave me a Xerox box full of papers, which I could not carry home on the metro. I have not had a chance to look at it. If he would just give me these folders, I could look at them in two minutes. (Will she be able to look at the whole box in two minutes?). Docket Entry # 69, Trial Transcripts 03/28/2007, Page 139.

*Kyless v. Whitley*, 514 U.S. ___, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The government has the duty to disclose exculpatory evidence even in the absence of a request, if the withheld evidence considered as a whole, results in a reasonable probability" that a different result would have obtained. The defendant does not need to show that with the evidence a different result was probable but only that the suppression

of the evidence undermined confidence in the outcome of the trial." The obligation exists regardless of the good or bad faith of the prosecutor and even if the police have failed to disclosed the evidence to him. "Once this is found, there is no need for harmless error review because the test is that same. Also, the suppressed evidence is not to be considered item by item but collectively. Prosecutors should resolved doubtful questions in favor of disclosure."

"The Government generally may satisfy this burden by relying on undisputed facts in a pre-sentence investigation report, so long as the facts of the report are not intentionally contradictory, wildly implausible, or inconsistent with evidence from the trial." However, if the defendant was allowed to present his defense during trial to proof his innocence. *See; United States v. Pinnick*, 47 F.3d 434, 437 (D.C. Cir. 1995). In Akube Ndoromo's case, the evidence is total contradictory in the trial from the Superseding Indictment.

However, the government must demonstrate that the description in the report is based on a sufficient and also reliable source to establish the accuracy of that description. *See, United States v. Richardson*, 161 F.3d @738 (Explaining that the District Court erred when it's sentencing enhancement was based on the description prior conviction in a at sentence report where there was simply no way of knowing further. This burden is triggered whenever a defendant disputes the factual assertions in the government carries the burden to prove the truth of the disputed assertion. *United Sates v. Booker*, 125 S.Ct. 738 (2005) (citing 18 U.S.C. § 3553 (a) (1) & (2) (c); *Henderson v. U.S.*, 687 A.2d 918 (D.C. App. 1996)

"If suppression of exculpatory evidence by state causes trial of defendant to be fundamentally unfair, he has been denied due process and conviction must be set aside, and doctrine has been declared applicable to entry of plea of guilty." *See, State v. Choate, MO.* App. S.D. 1982, 639 S.W. 2d 906; U.S. v. Barker, C.A. D.C. 1975, 14 F.2d 208, 168 U.S. App. D.C. 312, Certiorari denied 95 S.Ct. 2420, 421 U.S. 1013, 44 L.Ed.2d 682.

### JUDGE EMMETT G. SULLIVAN FALSIFY INSTRUCTIONS AND OBSTRUCTION OF JUSTICE

### Status hearing on March 21, 2007

Ms. Pendry: Well, I submit to the court that what we have here is sort of callous disregard to people's rights with these teams coming in, storming people's apartments, 10 and 12 agents at a time, to execute search warrants in a white collar crime case and storming people's apartments ...

The Court: what are they supposed to do? They don't know who's on the other side of the door, they don't know whether—I mean, they were investigating a pretty significant alleged theft here, what, over a million dollars or so." The Court: "we can do that. I just finished one. It was wire fraud. What is this, mail fraud?

Mr. Austin: **Healthcare, mail, wire.** The Court: all right. What's the government offering in this case? Mr. Austin: I honestly cannot recall the specific offer. It was a very generous offer. The Court: tell me what it is. Mr. Austin: I don't have my paper work. The Court: what was his voluntary guideline? Do you recall what it is?

The Court: maybe that's too powerful. Maybe I should just reject it as not being persuasive. I find the law enforcement officer's testimony more persuasive at this point." It may well be that a jury of his peers will find to the contrary, I don't know. But I find that the law enforcement officers, both, are more credible at this point than either the defendant and/or his witness, a former employee. The Government: For the reason the government would ask that all three of the motions, the motion to suppress evidence, the motion to suppress statements, and the motion to dismiss the indictment, all be rejected.

The Court: For the record, I will at this point deny the motion to treat the motions as conceded. That's denied. With respect to the remaining three motions Ms. Pendry, why should I credit your client and disbelieve the law enforcement. Ms. Pendry: I am sorry, you're Honor?" The Court: why should I credit your client and reject the testimony of the law enforcement officer?

The Court: what about national origin? Sometimes I give that. Do you want me to give that or not? *See*, Protection of citizens: to all persons within the territorial jurisdiction, without any difference of race or color or of nationality; and equal protection of the law is a pledge of the protection of equal laws. *Yick WO v. Hopkins, Cal.1886 6 S.Ct 1064 118 U.S. 369, 30 L. Ed. 220.* Also, *See, Wormen v. Moss, 1941, 29 N.Y.S.2d 798, 177 Misc. 19.*

See, Motions Hearing Transcripts March 21, 2007, Docket Entry # 66, Date on

11/30/2007, pages 130- 133, 135, 136, 138-140 and 143. **Further, see Superseding**

**Indictment Date 02/01/2006, Docket Entry # 3.**

### Beginning of trial on March 26, 2007 Obstruction

The court: Actually, I have money laundering, false statements related to healthcare, the wire fraud. What we have done is kind of tracking the language of statute for the healthcare fraud and the false statements related to healthcare matters. I don't know if you have something more comprehensive than that or not. I can show you both what we have. There wasn't anything really in the red book or the federal practice book. Mr. Austin: **I'll get the court and defense counsel something. Probably right after the lunch break I'll be able to get something.** *See* TR. March 26, 2007 Docket Entry # 67 Entry Date 11/30/2007 Pages 4, and 5.

### March 26, 2007 Beginning of Trial Instruction

The Court: The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the government has proved beyond a reasonable doubt every element of an offense with which the defendant is charged, it is your duty to find him **guilty of that offense**. On the other hand, if you find that the government has failed to prove beyond a reasonable doubt any element of an offense with which the defendant is charged, you must find the **defendant not guilty of that offense**. Docket Entry # 67, Trial Transcripts Page 138.

But *See,* trial closing instructions March 29, 2007, page 107, and 108 Docket Entry # 70

Entry Date 11/30/2007, as follow:

### March 29, 2007 End of Trial Closing Instructions

The Court: And right now I'm going to instruct you that, and I just misplace some of this paper, that there's certain counts in the indictment that you need not consider and you need not speculate as to any reason why you shouldn't consider them. And, quite frankly, I have misplaced what I just wrote down. Actually, they're **counts Two, Three, Four** and **Five** and **Seventeen** and **Eighteen**. The reason why I mention that is because you'll see numerical gaps on the verdict form, you won't see those numbers. That's because you don't need to focus on those counts in the indictment. And just for clarity sake, when we send the indictment back, you won't even see reference to those numerical counts, just so that there's no confusion. So again, there's **counts Two, Three, Four** and **Five** and **counts Seventeen** and **Eighteen** that you need not give further consideration to. Docket Entry # 70, Trial Transcripts Pages 107, and 108.

### March 29, 2007 Obstruction

The Court: no need to send what back? Mr. Austin: The indictment back. I'll leave it up to the court. The Court: I think I said I would send the indictment back. Actually, everything is in the instruction and the verdict form. And, again, it is not evidence, but it is laid out all the counts, as to what the charges are. So you won't.

The Court: counsel, we may have to make a change to those two counts that allege interstate commerce. The last sentence, if you find beyond a reasonable doubt that

13

Medicaid was a healthcare... Mr. Austin: what page? The Court: I'm sorry, 26. The last sentence. If you find beyond a reasonable doubt that Medicaid was a healthcare benefit program effecting interstate or foreign commerce, then the first element of the crime is satisfied.

The Court: and that will be changed with respect to its healthcare fraud and the false statement. I'll just change that language to mean then the commerce element of the crime is satisfied or that portion of the crime is satisfied. The Court: all right. If you turn to page 39, probably 39 of yours, the last sentence, again, it just needs to be consistent. Mr. Austin: that sounds right. The Court: do you see that? It's very complicated, **but Christie has been wrestling with these things longer than any of us**. See Docket Entry # 70, Trial Transcripts Pages 41-145.

However, *See,* this, "**The Court: I don't need to resolve it now. We need to resolve it before the trial. "I don't really care." And I know him by both names. So that's fine for this hearing. But I don't want to be insensitive about it. If he has a legal name, even though that's not the name on the indictment, they're not going to see the indictment anyway**" (March 21, 2007), Motions Hearing Transcripts pages 15, 16, Docket Entry # 66, Entry Date 11/30/2007.

### General requirements

According to the Superseding Indictment the Money laundry charges comes as a result of the Mail, Wire and Health Care Fraud, since Government failed to prove Wire Fraud and Mail Fraud and lie in Health Care Fraud Counts, so government failed to prove this case in entirety. Therefore, Money Laundry Counts was nowhere to be proven. Counts 20-26 are barred due to insufficient of government proof.

In this case, like all cases always Health Care Fraud goes together with Mail and Wire Fraud; Government failed to prove both Mail and Wire Fraud, the defendant was entitled for Acquittal constitutionally, but his due process was denied. The Court and Government make illegally move and remove the Mail Fraud from the indictment, but the transcripts March 21, 2007, Page 143, Docket Entry # 66 will be an exhibit.

However, when individual is swindling, offender does not escape telecommunication, effectiveness of communication to further Fraud. *Asemani v. Rice*, Not Reported in F.Supp.2d, 2005 WL 1903560,, D.D.C., July 12, 2005; *U.S. v. Sun-Diamond Growers of California*, 138 F.3d 961, 1998 WL 121493, 329 U.S.App.D.C. 149, 67 USLW 3479, D.C.D.C. March 20, 1998. "Jury could have found that WIRE FRAUD defendant had some sort of fraudulent scheme in mind when he placed telephone call on which charge was based and left message for accomplice, and thus that call furthered scheme as required to bring case within coverage of wire fraud statute."

The defendant was punished since 12/21-22/2004, and was indicted 14 Months later on February 06, 2006, but the punishment was not relieved after all his funds were seized and his cars were seized and his business was shut down. **The Superseding Indictment charges Akube Ndoromo of fraudulent $1,518. The $1.8 million claim is Government's lie to deceive the petit jury during trial**. The total punishment inflicted on the defendant since 12/21-22/2004-07/30/2008, are 44 Months. **The defendant in this case was been denied Due Process of Law and Due Process of Law is a right not privilege and Akube has been denied equal protection of law and equal protection of law is a pledge not a right.**

The defendant will want to know whether the Government will get to Court and Standby Counsel "SOMETHING" during the upcoming sentencing date of October 02, 2008? To gain the support of the Court as it happened in the last two hearings and one trial *See* TR. Docket # 67, Page 4, and 5.

**Wherefore**, the District Court of the District of Columbia decisions were based on denial of equal right protection and denial of due procedures to the petitioner. The

government was hiding criminal activity that was performed by government. The Court, Government, and Defense counsel conspire to convict Mr. Ndoromo to them to have a free hand to his funds and to government to get away from criminal violation without due process of the law. This is why the defendant must be acquitted. See Rule 29.

I **HEREBY**, satisfy under penalty of perjury that on going Pre-sentence Report is true to the best of my knowledge.

Pro se,

Date 08/07/2008

**Akube W. Ndoromo**
DC #309364
CCA/CTF Prison
1901 E Street SE
Washington, 20003

**NOTARY PUBLIC:**

16